IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN B.R. BANK et al.,

Plaintiffs,

v.

CIVIL ACTION
NO. 13-2682

CITY OF PHILADELPHIA et al.,

Defendants.

## OPINION

**Slomsky, J.**                                                          **January 9, 2014**

## I.     INTRODUCTION AND FACTUAL BACKGROUND

This case involves claims made against Defendants for violations of federal and state law.

The claims include allegations of unreasonable seizures in violation of 42 U.S.C.A. § 1983,

abuse of process, civil conspiracy, and conversion, and stem from the following facts. Plaintiffs,

John B. R. Bank, Samuel T. Ascolese, Jr., and Walter Mark McClanahan, owned vintage cars.

John Bank owned a 1939 Buick convertible. (Doc. No. 1 at ¶ 16.) Samuel Ascolese owned a

1949 Cadillac convertible. (Id. at ¶ 17.) Walter McClanahan owned a 1947 Cadillac Fleetwood.

(Id. at ¶ 18.) The cars needed restoration work. Plaintiffs took them to James H. Foster

("Foster"), who operated a business known as West Johnson Classics.[1]

_____

[1] The official name of Foster's company is West Johnson Garage, Inc., which does business as
West Johnson Classics. Foster also owns another company, International Collectibles, Inc.
Foster, West Johnson Garage, Inc. d/b/a West Johnson Classics, and International Collectibles,
Inc., collectively referred to as "the Foster Defendants." The first time they were sued in this
case was when the owner of the garage, Alfred Jefferson, a named Defendant who was originally
sued by Plaintiffs, in turn sued the Foster Defendants, claiming they were responsible for any
loss incurred by Plaintiffs.

1

Foster repaired and restored classic cars at a garage located at 86 West Johnson Street, Philadelphia, Pennsylvania, 19144. (Id. at ¶ 13.) The garage was owned by Alfred Jefferson ("Jefferson"). On March 1, 2010, Foster signed a Non-Residential Lease for Real Estate ("Lease Agreement") to rent the garage from Jefferson. (Doc. Nos. 56, Exhibit A; 70 at 2.) In addition to using the garage for repairs, Foster used the space to store classic cars and expensive parts. The Lease Agreement provided that Foster would pay Jefferson a monthly rental of $3,000. (Doc. No. 70 at 2.)

The two men had a falling out, and on or about November 16, 2010, Jefferson brought an action in Landlord-Tenant court against Foster for two months' back rent that had not been paid. (Doc. No. 1 at ¶ 19.) On December 17, 2010, the Philadelphia Municipal Court entered judgment in favor of Jefferson and against Foster in the amount of $9,596 plus interest. (Doc. No. 70 at 3.) On January 21, 2011, the court also issued a Writ of Possession in favor of Jefferson. (Doc. No. 9, Exhibit A.)

According to Jefferson, Foster knew about the Writ of Possession and had a contractual duty under the Lease Agreement to remove any goods and effects from the garage. (Doc. No. 70 at 3.) In response, the Foster Defendants contend that Foster was working with Jefferson to remedy the delinquent payments and was in the process of clearing out the contents of the garage, which housed Plaintiffs' cars in various stages of restoration. (Doc. No. 66 at 3.) According to Jefferson, however, the Foster Defendants failed to take prompt and/or reasonable action to remove the cars and parts from the garage and to return them to Plaintiffs. (Doc. No. 70 at 3.) The items remained in the garage for roughly four months after the Writ of Possession was issued.

2

On or about May 16, 2011, in the early morning hours, several Philadelphia police officers arrived at the West Johnson Garage where, as noted, the cars and parts were stored. (Doc. No. 1 at ¶ 24.) Using a line of tow trucks, and pursuant to Pennsylvania's abandoned vehicle code,[2] the officers removed classic cars and parts from the commercial property. (Doc. Nos. 1 at ¶ 42; 48 at ¶ 108.) Plaintiffs' cars and parts were removed without their knowledge. After the police removed the cars and parts, they were turned over to Century Motors, Inc. ("Century Motors"). (Doc. No. 1 at ¶ 45.) According to the Foster Defendants, "Century Motors holds itself out as a body shop, garage, and specialty parts dealer for antique, classic, and muscle cars." (Doc. No. 66 at 4.) Century Motors asserts that it was authorized under law to accept and store the cars and parts. (Doc. No. 48 at 5.) After the police identified the cars belonging to Plaintiffs, Century Motors returned them to Plaintiffs. (Id. at ¶ 45. See also Doc. No. 1 at ¶¶ 58, 66-67.) The cars were returned damaged. Moreover, certain parts were never recovered by Plaintiffs.

Given these events, Plaintiffs filed an action against the City of Philadelphia and Police Officer Sean Boyle ("Officer Boyle"), who seized the cars and parts, and against Jefferson and Century Motors.[3] In their Complaint, Plaintiffs assert four claims: 1) Count I – Unreasonable

---

[2] 75 Pa. Cons. Stat. Ann. § 7301 et seq. (West).

[3] This case is closely related to another case before the Court, Foster et al. v. City of Philadelphia et al., Civil Action No. 2:12-cv-05851-JHS. The Foster Defendants are plaintiffs in the related case. Both cases were originally assigned to the Honorable Chief Judge Petrese B. Tucker. Judge Tucker consolidated the cases for purposes of discovery (Doc. No. 60), and on October 31, 2013, the Chief Judge reassigned both cases to this Court (Doc. No. 61).

To date, Plaintiffs have not brought a claim against any of the Foster Defendants. In his opposing brief, Jefferson contends that it is a conflict of interest for the same law firm to represent Plaintiffs and the Foster Defendants. (Doc. No. 70 at 2, n.1.) This issue was discussed at the hearing held on December 11, 2013. At this point, the Court is satisfied that counsel will ensure that its representation complies with the Pennsylvania Rules of Professional Conduct.

3

Seizure of Property in Violation of 42 U.S.C.A. § 1983; 2) Count II – Abuse of Process; 3) Count III – Conversion; and  4) Count IV – Civil Conspiracy.  (Doc. No. 1 at ¶¶ 82-126.)  In turn, on June 26, 2013, Century Motors filed a Third-Party Complaint[4] against Steffa Metals, Inc., alleging that Steffa Metals participated in the removal, junking, salvaging, and/or disposal of various cars and/or parts that were taken from the West Johnson Garage on May 16, 2011.  (Doc. No. 17 at ¶ 19.)

Next, on August 13, 2013, Jefferson filed a Third-Party Complaint against the Foster Defendants, seeking indemnification.[5]  (Doc. No. 34.)  Thereafter, Jefferson filed two Amended Third-Party Complaints against the Foster Defendants, first on October 24, 2013 (Doc. No. 55) and then on October 29, 2013 (Doc. No. 56).  On November 22, 2013, the Foster Defendants filed a Motion to Dismiss Jefferson's Third-Party Complaint (Doc. No. 66), which is now before the Court for a decision.

The Foster Defendants have also moved to dismiss Century Motors' Second Amended crossclaim.[6]  (Doc. No. 53.)  In its Second Amended Answer, Century Motors brought a

---

[4] Federal Rule of Civil Procedure 14 governs third-party practice and permits a civil defendant to sue a party who has not yet been named as a defendant in the case.  The original defendant is then known as a third-party plaintiff, and the new party being sued is known as a third-party defendant.  The complaint filed against the third-party defendant is referred to as a "Third-Party Complaint."

[5] Previously, the City of Philadelphia and Officer Boyle filed a Third-Party Complaint against the Foster Defendants.  (Doc. No. 12.)  The City and Officer Boyle, however, voluntarily dismissed the Third-Party Complaint on September 3, 2013.  (Doc. No. 40.)

[6] Federal Rule of Civil Procedure 13 governs crossclaims and permits any party to the lawsuit to assert a claim against a co-party, as long as the claim arises out of the transaction or occurrence that is the subject matter of the original action or counterclaim, or if the claim relates to any property that is the subject matter of the original action.

Century Motors initially filed its crossclaim against the Foster Defendants on June 26, 2013.  (Doc. No. 16.)  On July 31, 2013, Judge Tucker granted the Foster Defendants' Motion to

crossclaim against the City of Philadelphia, Officer Boyle, and Alfred Jefferson. (Doc. No. 48 at 41-42.) Century Motors also asserted a crossclaim against the Foster Defendants seeking indemnification and/or contribution. (Id. at 43-46.) On October 10, 2013, the Foster Defendants filed a Motion to Dismiss Century Motors' crossclaim (Doc. No. 53), and this Motion is also before the Court for disposition. For reasons that follow, the Court will grant in part and deny in part the Foster Defendants' Motion to Dismiss Jefferson's Amended Third-Party Complaint. The Court will also grant the Foster Defendants' Motion to Dismiss Century Motors' Crossclaim in its entirety.[7]

## II.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663. See also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A.

---

Dismiss the crossclaim and Century Motors leave to amend. (Doc. No. 28.) Century Motors then filed its First Amended Answer with Affirmative Defenses and Crossclaims on August 5, 2013. (Doc. No. 29.) The Foster Defendants moved to dismiss the crossclaim for a second time (Doc. No. 39-1), and on September 16, 2013, Judge Tucker again granted the motion to dismiss (Doc. No. 46). Century Motors was given leave to amend its Answer once more, but Judge Tucker ordered that "[n]o further curative amendments will be permitted." (Doc. No. 46.) Century Motors then filed the Second Amended Answer on September 20, 2013. (Doc. No. 48.) This Answer contains the crossclaim against the Foster Defendants which is the subject of one of the motions to dismiss.

[7] For purposes of this Opinion, the Court has considered the original Complaint (Doc. No. 1), the Amended Third-Party Complaint of Alfred Jefferson (Doc. Nos. 55, 56), the Foster Defendants' Motion to Dismiss Jefferson's Third-Party Complaint (Doc. No. 66), Alfred Jefferson's Response in Opposition (Doc. No. 70), Defendant Century Motors' Second Amended Answer (Doc. No. 48), the Foster Defendants' Motion to Dismiss Century Motors' Second Amended Crossclaim (Doc. No. 53), the Response of Century Motors in Opposition (Doc. No. 54-2), and the arguments of counsel for the parties at a hearing on the Motions held on December 11, 2013.

France v. Abbott Labs., 707 F.3d 223, 231, n.14 (3d Cir. 2013) (quoting Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

6

## III.   ANALYSIS

The Foster Defendants filed two separate motions to dismiss.  First, as Third-Party

Defendants, they filed a Motion to Dismiss Defendant/Third-Party Plaintiff Jefferson's Amended

Third-Party Complaint.  (Doc. No. 66.)  The Foster Defendants have also moved to dismiss

Century Motors' Second Amended Crossclaim brought against them.  (Doc. No. 53.)  The Court

will discuss each Motion seriatim.

### 1.   Alfred Jefferson's Third-Party Complaint Alleges Facts Which Plausibly Give Rise to a Cause of Action for Indemnification on Counts II-IV[8]

In his Complaint, Jefferson raises a claim for indemnification[9] against the Foster

Defendants.  Jefferson's claim is based on language in the Lease Agreement[10] which states that

the Lessee will "[i]ndemnify and save Lessor harmless from any and all loss occasioned by

Lessee's breach of any of the covenants, terms and conditions of [the Lease Agreement], or

---

[8] For reasons discussed, infra, Jefferson is precluded by law from asserting a claim for indemnification on Count I—the § 1983 claim.  As noted above, the three other claims in this case are abuse of process (Count II); conversion (Count III); and civil conspiracy (Count IV).

[9] "[I]ndemnification shifts the entire loss from one party to another." Richardson v. John F. Kennedy Mem'l Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993).  A right to indemnification can arise from a contract to indemnify or by operation of common law. Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 552 F. Supp. 2d 515, 519 (E.D. Pa. 2008) (citation omitted).  Absent a contract to indemnify, a defendant will be entitled to indemnification if, due to no fault of his own, he has been legally compelled to pay for damages primarily caused by another. Id. (quotation omitted).  In this case, the Lease Agreement is the contract with the indemnification clause.

[10] Jefferson, West Johnson Garage, Foster, and a man named Donald J. Shields are all parties to the Lease Agreement.  (Doc. No. 56, Exhibit A at ¶ 1.)  To the extent Jefferson's claim for indemnification is based on the Lease Agreement, it would likely fail as to Third-Party Defendant International Collectibles, Inc., because this corporation is not a party to the Lease Agreement.  At the hearing held on the Motion on December 11, 2013, it became evident that International Collectibles had property stored at the West Johnson Garage when the police came on May 16, 2011 and removed its contents.  Given this fact, it is premature to dismiss International Collectibles as a Third-Party Defendant on Counts II to IV at this stage of the litigation.

7

caused by his family, guests, visitors, agents and employees." (Doc. No. 56, Exhibit A at ¶ 9(i)

(emphasis added).) According to Jefferson, Foster covenanted and agreed that:

> a. Foster will indemnify Jefferson for any and all loss occasioned by Foster's breach of any of the covenants, terms and conditions [of] this lease.
>
> b. Foster will surrender the premises in the same condition in which he assumed them.
>
> c. Foster may store his goods and effects in the building, and that goods left over thirty days after the expiration of his occupancy may be sold without further notice.
>
> d. Jefferson is expressly released as bailee or otherwise insulated from all claims for any such loss or damage resulting from goods and effects stored.
>
> e. The termination of this lease or the taking or recovering of the premises shall not deprive Jefferson of any of its remedies or action against Foster.

(Doc. No. 56 at ¶ 5.) Pursuant to the terms of the Lease Agreement, Jefferson filed the Third-

Party Complaint against the Foster Defendants seeking indemnification.

        In their Motion to Dismiss Jefferson's Complaint, the Foster Defendants argue that the

indemnity clause in the Lease Agreement does not, and cannot, apply to Plaintiffs' claims. (Doc.

No. 66 at 6.) They contend that the language in the Lease does not provide a basis for Jefferson's

claim for indemnification. (Id. at 8.) According to the Lease, Foster and West Johnson Garage

agreed to "[i]ndemnify and save [Jefferson] harmless from any and all loss occasioned by [their]

breach of any of the covenants, terms and conditions of [the Lease Agreement.]" (Doc. No. 56,

Exhibit A at ¶ 9(i).) Under a covenant in the Lease, any goods left over thirty days after the

expiration of Foster's occupancy could have been sold at public or private sale without further

notice. (Doc. No. 56 at ¶ 10. See also id., Exhibit A at ¶ 7(a).) The Lease also provides that the

Foster Defendants would "[p]eaceably deliver up and surrender possession of the demised

premises to the Lessor at the expiration or sooner termination of [the Lease Agreement],

8

promptly delivering to Lessor at his office, all keys for the demised premises, <u>with all trash and</u> <u>personal belongings removed</u> and building(s) broom-swept clean." (<u>Id.</u> at ¶ 9(f) (emphasis added).)

According to Jefferson, "[a]t the time of the Writ of Possession/Eviction, Foster had goods and effects, including Plaintiffs' vehicles and property, stored in the building." (Doc. No. 56 at ¶ 7.) Jefferson also claims that Foster had ample time to either remove the goods from the West Johnson Garage or to notify Plaintiffs to do so. (<u>Id.</u> at ¶ 8.) Accepting these facts as true, they plausibly demonstrate that the Foster Defendants breached at least two covenants of the Lease Agreement, which required that goods left over thirty days after the expiration of the occupancy may be sold without further notice and that all trash and personal belongings be removed at the termination of the lease. (Doc. No. 56, Exhibit A at ¶ 9(f).) According to the Lease Agreement, Jefferson is entitled to indemnification for any loss caused by the breach of a covenant of the Lease Agreement. Thus, Jefferson's claim for indemnification will not be dismissed at this time.

Next, the Foster Defendants contend that Jefferson is precluded from seeking indemnity because Plaintiffs allege that Jefferson committed intentional torts. (Doc. No. 66 at 7.) As an initial matter, "[u]nder Pennsylvania law, indemnity is available only (1) 'where there is an express contract to indemnify,' or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts." <u>Allegheny Gen. Hosp. v. Philip Morris, Inc.</u>, 228 F.3d 429, 448 (3d Cir. 2000) (quoting <u>Richardson v. John F. Kennedy Mem'l Hosp.</u>, 838 F. Supp. 979, 989 (E.D. Pa. 1993)). If there is no express contract to indemnify, then the party seeking indemnity must rely on the second option—common law indemnification. <u>Id.</u> Common law indemnification is appropriate when a defendant's liability "arises not out of its own conduct, but

9

out of a relationship that legally compels the defendant to pay for the act or omission of a third

party." Morris v. Lenihan, 192 F.R.D. 484, 489 (E.D. Pa. 2000). The common law right of

indemnity "enures to a person who, without active fault on his own part, has been compelled, by

reason of some legal obligation, to pay damages occasioned by the initial negligence of another,

and for which he himself is only secondarily liable."[11] Id. at 488 (quoting Builders Supply Co. v.

McCabe, 77 A.2d 368, 370 (Pa. 1951)) (emphasis in original).

Because the party seeking common law indemnity must demonstrate that there was no

active fault on his own part, "indemnity is unavailable to an intentional tortfeasor because it

would permit him to escape liability for his own deliberate acts." Bancroft Life & Cas. ICC, Ltd.

v. Intercontinental Mgmt., Ltd., No. 10-704, 2012 WL 1150788, *6 (W.D. Pa. Apr. 5, 2012). See

also Harmelin v. Man Fin. Inc., No. 06-1944, 2007 WL 2932866, *5, n.6 (E.D. Pa. Oct. 2, 2007)

(explaining that Pennsylvania does not permit indemnification for intentional torts); Britt v. May

Dep't Stores Co., No. 94-3112, 1994 WL 585930, *3 (E.D. Pa. Oct. 14, 1994) ("The established

rule of law is that indemnity is unavailable to an intentional tortfeasor . . . ."); Canavin v. Naik,

---

[11] For example:

> Secondary liability exists . . . where there is a relation of employer and employee,
> or principal and agent; if a tort is committed by the employee or the agent
> recovery may be had against the employer or the principal on the theory of
> respondeat superior, but the person primarily liable is the employee or agent who
> committed the tort, and the employer or principal may recover indemnity from
> him for the damages which he has been obliged to pay. Another example, and
> perhaps the most familiar one, is when a pedestrian is injured by falling in a hole
> in the pavement of a street; in such a case the abutting property owner is primarily
> liable because of his failure to maintain the pavement in proper condition, but the
> municipality is secondarily liable because of its having neglected to perform its
> duty of policing the streets and seeing to it that the property owners keep them in
> repair; if therefore the injured person chooses to bring suit against the
> municipality the latter can recover indemnity from the property owner for the
> damages which it has been called upon to pay.

Builders Supply, 77 A.2d at 370.

648 F. Supp. 268, 269 (E.D. Pa. 1986) ("Indemnity is likewise unavailable to an intentional tort-feasor because it would permit him to escape liability for his own deliberate acts."). This means that "[a]bsent a contract to the contrary, indemnity is not available to a party who is actively negligent" or engages in intentionally tortious conduct. Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 552 F. Supp. 2d 515, 519 (E.D. Pa. 2008) (citations omitted).

In this case, Plaintiffs assert claims against Jefferson for civil rights violations, abuse of process, conversion, and civil conspiracy. The Foster Defendants argue that these are intentional tort claims, and therefore, Jefferson cannot seek common law indemnification under Pennsylvania law. However, Jefferson does not make a claim for common law indemnity. Instead, Jefferson relies on an express contract to indemnify—the Lease Agreement. In each of the cases cited by the Foster Defendants,[12] there was no contract to indemnify, so the parties seeking indemnification relied on common law principles. Thus, indemnification was not available for the underlying intentional torts. This case is distinguishable because there is an express contract to indemnify, and Jefferson does not need to rely on a theory of common law indemnification. Therefore, the rule that an intentional tortfeasor cannot seek common law indemnification is inapplicable here and has no bearing on Jefferson's claim for indemnification based on the Lease Agreement.[13]

---

[12] The Foster Defendants relied on the following cases, which did not involve express contracts to indemnify: Bancroft Life & Cas. ICC, Ltd. v. Intercontinental Mgmt., Ltd., No. 10-704, 2012 WL 1150788 (W.D. Pa. Apr. 5, 2012); Morris v. Lenihan, 192 F.R.D. 484 (E.D. Pa. 2000); Canavin, 648 F. Supp. 268.

[13] Even if Jefferson made a claim for common law indemnification, it would be premature to dismiss the claim at this stage of the litigation. First, Jefferson denies that he engaged in any intentionally tortious conduct. (Doc. No. 56 at ¶ 12.) Accepting this fact as true, Jefferson could make a claim for common law indemnification. However, if a jury were to find that Jefferson did commit an intentional tort, then he would not be entitled to indemnity under the common law. It is too early in the litigation, however, to determine whether Jefferson engaged in

Finally, the Foster Defendants contend that indemnification is inappropriate for § 1983

claims. (Doc. No. 66 at 7.) In support of this argument, the Foster Defendants rely on Rocuba v.

Mackrell, No. 10-1465, 2011 WL 5869787 (M.D. Pa. Nov. 22, 2011). In Rocuba, the district

court found that "there exists no claim for indemnity or contribution for § 1983 actions."

Rocuba, 2011 WL 5869787 at *3. In reaching this decision, however, the district court relied on

cases that dealt solely with claims for contribution, despite using the terms "indemnification" and

"contribution" interchangeably. Contribution and indemnity are not one and the same. Instead,

they are "separate and distinct causes of action. The right of contribution arises as between joint

[tortfeasors] where a party has paid more than its fair share of liability to a third party." Agere,

552 F. Supp. 2d at 519 (citation omitted). Contribution ensures that the loss is distributed

equally, so that "each joint tortfeasor pay[s] his or her pro rata share." Lasprogata v. Qualls, 397

A.2d 803, 805, n.2 (Pa. 1979). On the other hand, "[a] right of [i]ndemnity exists when the

entire loss is imposed on one person." Id. Unlike contribution, common law indemnification

requires a showing that the party seeking indemnity is without active fault, making this remedy

unavailable among joint tortfeasors who share responsibility for the plaintiff's harm. Agere, 552

F. Supp. 2d at 519.

While the Rocuba court explained that "[a] majority of courts . . . have found that there

exists no claim for indemnity or contribution for § 1983 actions[,]" 2011 WL 5869787 at *3

---

intentionally tortious conduct. Second, Plaintiffs brought a conversion claim in Count III, and
conversion is not necessarily an intentional tort. Under Pennsylvania law, a "defendant need not
have a conscious intent of wrongdoing to be liable for conversion, as long as he has exercised
wrongful control over the goods." Prudential Ins. Co. of Am. v. Stella, 994 F. Supp. 318, 323-24
(E.D. Pa. 1998) (citing Fort Washington Res., Inc. v. Tannen, 846 F. Supp. 354, 361 (E.D. Pa.
1994)). See also L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc., 777 A.2d 1090,
1095 (Pa. Super. Ct. 2001) ("[T]he tort of conversion does not rest on proof of specific intent to
commit a wrong.") Thus, even if Jefferson were making a claim for common law indemnity, the
rule prohibiting indemnity for intentional torts would not bar indemnification for negligent
conversion.

(collecting cases), the district court only relied on cases which have held that there is no federal right to contribution under § 1983.[14] As noted above, contribution and indemnification are distinct causes of action and should be analyzed separately. Section 1983 neither expressly provides for contribution nor indemnification.[15] The Supreme Court has explained that "inevitably[,] existing federal law will not cover every issue that may arise in the context of a federal civil rights action[,]" and a federal law may be deficient where it is "unsuited or insufficient 'to furnish suitable remedies[.]'" Moor v. Alameda Cnty., 411 U.S. 693, 702-03 (1973). When federal law is "deficient" in this manner, 42 U.S.C.A. § 1988(a) authorizes federal courts to look to state law for a suitable remedy, as long as the state law is "not inconsistent with the Constitution and laws of the United States." Kohn v. Sch. Dist. of City of Harrisburg, No. 11-109, 2012 WL 3560822, *4 (M.D. Pa. Aug. 16, 2012) (quoting 42 U.S.C.A. § 1988(a)).[16] See

---

[14] See note 26, infra, for a discussion of this line of cases.

[15] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983.

[16] 42 U.S.C.A. § 1988(a) provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far

also Robertson v. Wegmann, 436 U.S. 584, 587 (1978). Since federal law appears to be deficient on the right of indemnity in § 1983 actions,[17] the Court may look to Pennsylvania law. See Kohn, 2012 WL 3560822 at *4, *5 (finding §1983 deficient for failing to provide a right of contribution and subsequently looking to Pennsylvania law to supply such a right). See also Robertson, 436 U.S. at 589 (agreeing with lower courts that federal law was deficient for failing to cover the survival of civil rights actions under § 1983 upon the death of either the plaintiff or defendant).

As discussed above, Pennsylvania provides for indemnification based on either an express contract to indemnify or the common law. See Allegheny, 228 F.3d at 448. Having established that Pennsylvania law provides for indemnification, the question becomes whether this law is consistent with the Constitution and federal law. See Kohn, 2012 WL 3560822 at *4, *5. According to the Supreme Court, two main purposes underlie § 1983: 1) the compensation of civil rights victims; and 2) the prevention of abuse of power through deterrence. See Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 253 (1978)); Robertson, 436 U.S. at 590-91 (citations omitted). The Supreme Court explained that the "deterrence of future abuses of power by persons acting under color of state law is an important purpose of § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 268 (1981) (citations omitted).

---

as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . .

[17] Section 1983 appears to be deficient because the statute does not discuss whether indemnification is available or not.

14

In this case, Plaintiffs have not sued the Foster Defendants, nor have they alleged that the Foster Defendants are liable for a § 1983 violation.  Likewise, Jefferson does not allege that the Foster Defendants violated this civil rights statute.  Thus, if a jury were to find that Jefferson committed a § 1983 violation, requiring the Foster Defendants to indemnify Jefferson would not advance § 1983's goal of deterrence.  Instead, it would permit a civil rights violator to escape liability for his actions.  In this case, Pennsylvania law would be inconsistent with § 1983's purpose of deterring civil rights violations.  Therefore, Jefferson cannot maintain an indemnity claim for the underlying § 1983 action in Count I of Plaintiffs' Complaint.  While Jefferson has pled facts which plausibly give rise to a claim for indemnification for Counts II-IV, discussed supra, the indemnity claim for Count I will be dismissed.

### 2. Century Motors' Claim Against the Foster Defendants, While Properly Styled as a Crossclaim, Will be Dismissed for Failure to Allege Facts Which Plausibly Give Rise to a Cause of Action for Indemnification and/or Contribution

In its Second Amended Answer, Century Motors asserts a crossclaim against the Foster Defendants for common law indemnification and/or contribution.[18]  In the crossclaim, Century Motors alleges that the Foster Defendants were bailees who failed to safeguard Plaintiffs' property stored in the West Johnson Garage.  (Doc. No. 48 at 45.)  Century Motors contends that if it is held liable to Plaintiffs for their loss, then the Foster Defendants may be liable to Century Motors for indemnification and/or contribution.  (Id.)  The Court will treat the crossclaim as seeking both.  The Foster Defendants argue that both claims are improper for various reasons.

---

[18] Unlike Jefferson, who has only asserted a claim for indemnification against the Foster Defendants, Century Motors has made claims for indemnification and/or contribution against them.

15

### a. Century Motors' Claim Against the Foster Defendants is Properly Styled a Crossclaim Under Rule 13(g)

As an initial matter, the Foster Defendants assert that a procedural defect should result in dismissal of the crossclaim. They contend that they were not co-parties with Century Motors, and therefore, a crossclaim cannot properly be maintained against them under Federal Rule of Civil Procedure 13(g). (Doc. No. 53 at 5.) This Rule states as follows:

> A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

Fed. R. Civ. P. 13(g). Given the language of the Rule, Century Motors could only bring a crossclaim against the Foster Defendants if the Foster Defendants and Century Motors were co-parties. Thus, the Court must decide whether the Foster Defendants were co-parties with Century Motors when Century Motors filed its Second Amended Crossclaim against the Foster Defendants. Pertinent to this decision is the fact that on August 13, 2013, Jefferson filed a Third-Party Complaint against the Foster Defendants, making them Third-Party Defendants in the case. (Doc. No. 34.) Then, on September 20, 2013, Century Motors, already a defendant in this case, filed its Second Amended Crossclaim against the Foster Defendants, who were named as such by Jefferson in his Third-Party Complaint.

Unfortunately, "[t]he Federal Rules do not define who is a 'co-party' for purposes of Rule 13(g), and the courts in this Circuit have not settled the issue of whether an original defendant and a third-party defendant are co-parties such [that] they may assert cross-claims against one another." Reynolds v. Rick's Mushroom Serv., Inc., No. 01-3773, 2006 WL 1490105, *5 (E.D. Pa. May 26, 2006). Some courts have permitted a crossclaim between an

16

original defendant, like Century Motors, and third-party defendants, like the Foster Defendants. Id. (collecting cases). When courts have allowed a crossclaim in this circumstance, "the original defendant and third-party defendant 'were considered 'co-parties' since they were not opposing parties and were clearly non-adverse before the filing of the cross-claim.'" Id. (quoting Keystone Coke Co. v. Pasquale, No. 97-6074, 1999 WL 130626, *1 (E.D. Pa. Mar. 9, 1999)). As such, it appears that the Foster Defendants and Century Motors were co-parties, and therefore it was permissible for Century Motors to crossclaim against the Foster Defendants.

In disputing the notion that they were co-parties with Century Motors, the Foster Defendants rely on Reynolds, in which the district court held that the original defendants and third-party defendants were not "co-parties" because their interests were adverse before the crossclaims were filed. Id. Reynolds involved a dispute between neighboring landowners regarding pollution of the plaintiffs' pond in violation of federal and state law. There were three original defendants in Reynolds. In 2003, the original defendants unsuccessfully tried to join nineteen defendants by filing a third-party complaint pursuant to Rule 14.[19] Id. at *1. The Court declined to permit the third-party complaint for various reasons.[20] The litigation continued, and in 2006, the plaintiffs filed an amended complaint, adding a new defendant. Id. That new defendant subsequently filed a third-party complaint against thirty-four additional defendants. Id. Shortly thereafter, the three original defendants filed crossclaims against the newly joined third-party defendants, pursuant to Rule 13(g). Id. For various reasons, the Court severed the

---

[19] Federal Rule of Civil Procedure 14 governs third-party practice, and provides in relevant part: "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

[20] Those reasons included: 1) the Complaint was untimely and filed without leave of court; 2) adding nineteen defendants would significantly prejudice the plaintiffs; 3) joinder would complicate issues at trial; and 4) the addition of new defendants would substantially delay trial. Reynolds, 2006 WL 1490105 at *2.

17

third-party complaint, leaving the new defendant to pursue his third-party claims in a separate action. Id. at *5.

In addition, the Court struck the original defendants' crossclaims against the third-party defendants. Id. In doing so, the Court reasoned that in prior cases, original defendants and third-party defendants were considered co-parties when they "were clearly non-adverse before the filing of the cross-claim." Id. (quotation omitted). Some of the thirty-four third-party defendants were the same parties that the original defendants had previously tried to join in their 2003 third-party complaint that was dismissed. Id. Given this fact, the Court found that the original defendants' interests were clearly adverse to the third-party defendants' and struck the crossclaims as improper under Rule 13(g). Id.

The current case is dissimilar from Reynolds. Unlike the original defendants in Reynolds, Century Motors has never filed a third-party complaint against the Foster Defendants that was previously disallowed by the Court. In Reynolds, the Court was apprehensive that the original defendants were trying to circumvent the Court's prior ruling by repackaging their claims under Rule 13(g). Id. That is not a concern in this case. In addition, the Reynolds court was concerned about the effects of permitting additional claims against thirty-four new defendants in a case that had already been ongoing for many years. Id. The present case was filed less than a year ago, and there are only crossclaims against three third-party defendants, rather than thirty-four. The fears about complication and delay that worried the Court in Reynolds are not cause for concern here.

Another decision, Earle M. Jorgenson Co. v. T.I. U.S., Ltd., is more instructive. 133 F.R.D. 472 (E.D. Pa. 1991). In Jorgenson, the Court held that the original defendant and the third-party defendant were co-parties for purposes of Rule 13(g) because they were not opposing

18

parties when the original defendant filed a crossclaim against the third-party defendant. The

Court reasoned that "opposing parties," or adverse parties, "are parties that formally oppose each

other on a pleaded claim, such as plaintiffs and original defendants, or third-party plaintiffs and

the third-party defendants they have joined." Id. at 475. Because the original defendant and the

third-party defendant did not formally oppose each other prior to the crossclaim, the Court held

that they were not opposing parties, and were therefore considered co-parties for purposes of

Rule 13(g).

       In reaching this conclusion, the Court relied on a case from the Southern District of

Georgia. There, the district court reasoned:

> The Rules are to "be construed to secure the just, speedy, and inexpensive
> determination of every action." Fed. R. Civ. P. 1. To construe Rule 13(g) as not
> encompassing claims asserted by original defendants against third party
> defendants would force additional, independent actions to be filed. . . .
> Accordingly, the Court construes "co-party" to mean any party that is not an
> opposing party. This comports with the structure of the federal rules, which
> envision three types of claims that may be asserted by defendants: counterclaims,
> third-party claims, and cross-claims. Rule 13(a) provides that a counterclaim may
> be brought against any "opposing party." Rule 14(a) provides that a third-party
> complaint may be brought against "a person not a party." Finally, Rule 13(g)
> provides for cross-claims against "co-parties."   Certainly, the relationship
> between an original defendant and a third-party defendant fits somewhere into
> this framework.  Characterizing the relationship as that of "co-parties" appears to
> be the logical choice.

Georgia Ports Auth. v. Construzioni Meccaniche Industriali Genovesi, S.P.A., 119 F.R.D. 693,

695 (S.D. Ga. 1988). This reasoning is persuasive. Like the parties in Jorgenson, Century

Motors and the Foster Defendants did not become opposing parties until Century Motors filed its

crossclaim. Therefore, they are co-parties for purposes of Rule 13(g), and the crossclaim is

procedurally proper.

### b. Century Motors' Conclusory Statement that the Foster Defendants May be Liable to Century Motors is Not Sufficient to Allege a Claim for Indemnification and/or Contribution

Second, the Foster Defendants contend that the crossclaim fails to allege facts which demonstrate that they are directly liable to Century Motors. (Doc. No. 53 at 5.) According to the Foster Defendants, both Rules 14[21] and 13(g) require Century Motors to plead facts which demonstrate that the Foster Defendants are liable to them rather than to the Plaintiffs. (Id. at 7.) They argue that "the language of Rule 13(g) . . . clearly contemplates that a crossclaim must set forth sufficient facts to demonstrate that the coparty is liable to the crossclaimant." (Id.) In relevant part, the Rule provides that "[t]he crossclaim may include a claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Fed. R. Civ. P. 13(g). Similarly, as noted above, Ashcroft v. Iqbal requires that Century Motors plead enough facts, accepted as true, to plausibly show that the Foster Defendants are liable to Century Motors for the alleged misconduct. Ethypharm, 707 F.3d at 231, n.14 (3d Cir. 2013) (quotation omitted). Conclusions of law are not sufficient.

In its crossclaim, Century Motors asserts that "should the factual allegations of Plaintiffs' Complaint be proven true, then [the Foster Defendants] are alone liable to Plaintiffs, are Jointly and/or Severally liable to Century Motors, and/or are liable over to Century Motors by way of indemnity and/or contribution upon Plaintiffs' claims." (Doc. No. 48 at 45.) This "mere conclusory statement[]" does not meet the pleading requirements set forth in Iqbal. 556 U.S. at

---

[21] The Foster Defendants contend that Century Motors' claim is more akin to a third-party complaint that should be governed by Rule 14, rather than a crossclaim under Rule 13(g). (Doc. No. 53 at 7.) However, the Court has determined that Century Motors' claim is properly styled as a crossclaim under Rule 13(g). Therefore, the Court need not address the Foster Defendants' arguments regarding Rule 14, which provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).

663.  Likewise, this legal conclusion does not satisfy Rule 13(g), which also requires supporting facts.  Viewing the allegations in the crossclaim in the light most favorable to Century Motors, the facts alleged fail to give rise to a claim for indemnification or contribution.  Because indemnification and contribution are distinct causes of action, the Court will discuss each one separately.

### i.  Century Motors Fails to State a Claim for Indemnification

The Foster Defendants argue that Century Motors' crossclaim fails to set forth a valid indemnity claim for two reasons.  First, as mentioned above, they assert that Century Motors fails to allege any facts which demonstrate that the Foster Defendants are directly liable to Century Motors for indemnification.  Second, the Foster Defendants claim that Century Motors cannot seek indemnity for the intentional torts alleged against it, since "[common law] indemnification can only be sought by a party 'without active fault on his own part.'"  (Doc. No. 53 at 11 (original emphasis) (quotation omitted).)  As part of this argument, the Foster Defendants reiterate that indemnification is not permitted for § 1983 violations.  (Id. at 13.)  For the following reasons, the Court will grant the Foster Defendants' motion to dismiss Century Motors' crossclaim for indemnification.

"Under Pennsylvania law, indemnity is available only (1) 'where there is an express contract to indemnify,' or (2) where the party seeking indemnity is vicariously or secondarily liable for the indemnitor's acts."  Allegheny, 228 F.3d at 448 (quotation omitted).  Thus, as noted above, a defendant may seek indemnification based on an express contract or common law principles.  In its crossclaim, Century Motors does not allege that there is an express contract to indemnify between the Foster Defendants and Century Motors.  Therefore, Century Motors can only rely on principles of common law indemnification.

21

To make out a claim for common law indemnification, Century Motors must demonstrate

that "without active fault on [its] own part, [Century Motors] has been compelled, by reason of

some legal obligation, to pay damages occasioned by the initial negligence of [the Foster

Defendants], and for which [it] is only secondarily liable." Morris, 192 F.R.D. at 488 (quotation

omitted) (emphasis in original). In its crossclaim, Century Motors fails to identify a legal

obligation[22] that compels it to pay for harm primarily caused by the Foster Defendants' actions.

If such an obligation existed, then it would allow Century Motors to seek indemnification from

the Foster Defendants. Because Century Motors has failed to demonstrate how—and under what

legal theory—the Foster Defendants are liable to Century Motors, its claim for indemnification is

insufficient and will be dismissed. Because the crossclaim will be dismissed for this reason, the

Court need not discuss the Foster Defendants' additional arguments in support of dismissal.[23]

### ii.  Century Motors Fails to State a Claim for Contribution

The Foster Defendants also assert that Century Motors' crossclaim fails to set forth a

valid claim for contribution because Century Motors does not allege any facts which plausibly

demonstrate that the Foster Defendants and Century Motors are joint tortfeasors. The Court

agrees and will dismiss Century Motors' contribution claim as well.

Unlike the right to common law indemnity, which is unavailable among joint tortfeasors,

"the right to contribution only arises among joint tortfeasors." Richardson, 838 F. Supp. at 989

---

[22] See note 11, supra, for examples of legal obligations which compel one party to pay for the
harm primarily caused by another.

[23] The Foster Defendants' also argue that Century Motors cannot seek indemnification for
intentional torts or § 1983 violations. With regard to the intentional torts argument, it would be
premature to dismiss the claim at this stage of the litigation for the same reasons discussed in
note 13, supra. However, regarding the Foster Defendants' argument that indemnification is not
permitted for § 1983 violations, the Court agrees and would have dismissed the § 1983
indemnification claim for the same reasons discussed in Section III.1, supra.

22

(emphasis added). Thus, to establish a right of contribution under Pennsylvania law, Century

Motors must demonstrate that it and the Foster Defendants are joint tortfeasors. See Travelers

Indem. Co. v. Stengel, 512 F. App'x 249, 251 (3d Cir. 2013). Joint tortfeasors are "two or more

persons jointly or severally liable in tort for the same injury to persons or property, whether or

not judgment has been recovered against all or some of them." 42 Pa. Cons. Stat. Ann. § 8322.

Pennsylvania courts consider the following factors to determine joint and several liability:

> [T]he identity of a cause of action against each of two or more defendants; the
> existence of a common, or like duty; whether the same evidence will support an
> action against each; the single, indivisible nature of the injury to the plaintiffs;
> identity of the facts as to time, place, or result; whether the injury is direct and
> immediate, rather than consequential; responsibility of the defendants for the
> same injuria as distinguished from the damnum.[24]

Morris, 192 F.R.D. at 490 (E.D. Pa. 2000) (quotations omitted). Nowhere in its crossclaim does

Century Motors allege that it and the Foster Defendants are joint tortfeasors.[25] Moreover, the

crossclaim is devoid of any discussion of all of the factors which courts use to determine whether

joint and several liability is appropriate. As pled, the crossclaim fails to establish that the Foster

Defendants may be liable to Century Motors for contribution.[26]

---

[24] "Injuria" is a Latin term for an injury or the invasion of another's rights. "Damnum" refers to
damages or a loss in value.

[25] While Century Motors makes this allegation in its opposing brief (Doc. No. 54-2 at 10-11), the
crossclaim itself is completely devoid of any discussion of joint and several liability and whether
Century Motors and the Foster Defendants are joint tortfeasors. As mentioned above,
contribution is only available between joint tortfeasors. The crossclaim fails to allege a valid
claim for contribution.

[26] The Foster Defendants also argue that Century Motors cannot seek contribution for § 1983
violations. (Doc. No. 53 at 13.) District courts in the Third Circuit have struggled with whether
there is a federal right to contribution on a § 1983 claim. See Kohn v. Sch. Dist. of City of
Harrisburg, No. 11-109, 2012 WL 1598096, *6, n.9 (M.D. Pa. May 7, 2012) ("The issue is far
from clear . . . ."); Williams v. City of Philadelphia, No. 08-1979, 2010 WL 2977485, *7 (E.D.
Pa. July 27, 2010) ("Whether § 1983 supports the contribution claim that Third-Party Plaintiffs
assert against Third-Party Defendants is open to question."); Diaz-Ferrante v. Rendell, No. 95-

23

5430, 1998 WL 195683, \*4 (E.D. Pa. Mar. 30, 1998) ("[T]he viability of a contribution claim in a § 1983 action is thus dubious."). This confusion stems from concerns regarding the continued applicability of a Third Circuit case, Miller v. Apartments & Homes of New Jersey, Inc., 646 F.2d 101 (3d Cir. 1981). There, the plaintiffs brought claims against the defendants for violations of the Fair Housing Act, 42 U.S.C.A. 3601 et seq., and the Civil Rights Act under 42 U.S.C.A. § 1982. Both statutes prohibit discrimination in housing. In Miller, the "Third Circuit found an implied right to contribution as a matter of federal common law and indicated that defendants adjudicated to be liable may have the amount of liability reduced by the amount paid by [co-defendants who previously settled with the plaintiffs]." Rocuba, 2011 WL 5869787 at \*3, n.5.

In reaching this decision, the Third Circuit relied on Glus v. G. C. Murphy Co., 629 F.2d 248 (3d Cir. 1980) cert. granted, judgment vacated sub nom. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co., 451 U.S. 935 (1981). Glus held that although Title VII did not specifically provide for a right to contribution, a right of contribution nonetheless existed as a matter of federal common law. The Miller Court relied on Glus for the proposition that "[f]ederal courts have fashioned common law contribution principles in civil rights cases" and therefore found that contribution was available for § 1982 claims. Miller, 646 F.2d at 108. Shortly after Miller was decided, however, the Supreme Court held that other federal laws did not implicitly create a federal right to contribution. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630 (1981) (finding no right of contribution under federal antitrust laws); Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77 (1981) (finding that no right for contribution exists under the Equal Pay Act or Title VII). The Supreme Court vacated Glus and remanded the case to the Third Circuit for further consideration in light of Nw. Airlines. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co., 451 U.S. 935 (1981). On remand, the Third Circuit recognized that Title VII did not permit contribution claims, thus removing the foundation upon which Miller relied. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C. Murphy Co., 654 F.2d 944 (3d Cir. 1981).

Even though Miller dealt with claims under § 1982 and the Fair Housing Act, rather than § 1983, district courts have looked to Miller in determining whether there can be a claim for contribution for § 1983 actions—presumably because Miller is also a civil rights case. Because Miller relied on Glus, and Glus was subsequently vacated, district courts have questioned Miller's precedential value. See, e.g., Rocuba, 2011 WL 5869787 at \*3, n.5; Diaz-Ferrante, 1998 WL 195683 at \*4, n.1. While some district courts in the Third Circuit have continued to apply Miller to allow contribution for § 1983 claims, other district courts within the Circuit—and a majority of courts outside it—have held that there can be no claim for contribution for § 1983 violations. See Rocuba, 2011 WL 5869787 at \*3 (collecting cases). While it is true that Miller has never been overruled, the Court agrees that the intervening Supreme Court decisions render its precedential value suspect. Moreover, the Third Circuit has signaled that its holding in Miller is narrower in scope and likely does not apply to contribution claims for § 1983 violations. See Snyder v. Bazargani, 402 F. App'x 681, 682 (3d Cir. 2010) (explaining that in Miller, the Third Circuit "held that there is a right to contribution from joint tort-feasors under the Fair Housing Act"). Given Miller's history and the fact that a majority of courts do not permit contribution for § 1983 actions, it is unlikely that Century Motors could maintain a contribution claim for the alleged § 1983 violation even if they alleged that the Foster Defendants were joint tortfeasors.

24

## IV.    CONCLUSION

For the reasons set forth above, the Foster Defendants' Motion to Dismiss Jefferson's

Amended Third-Party Complaint will be granted in part and denied in part. Jefferson's claim for

indemnification of the § 1983 claim in Count I will be dismissed. However, the Court will deny

the Foster Defendants' Motion as it relates to Jefferson's claim for indemnification for Counts II-

IV. The Foster Defendants' Motion to Dismiss Century Motors' Second Amended Crossclaim

will be granted in its entirety. Century Motors, however, will be granted leave to file a Third

Amended Answer.[27]

---

[27] In her Order from September 16, 2013, Judge Tucker stated that no further curative
amendments would be permitted as they related to Century Motors' crossclaim against the Foster
Defendants. (Doc. No. 46.) On this record Century Motors may have been unaware of why its
previous crossclaims were dismissed. This Court will grant Century Motors leave to file a Third
Amended Answer one more time, with the understanding that if Century Motors determines after
a full review of this Opinion that it cannot present plausible facts to support a crossclaim against
the Foster Defendants, none will be filed.

25